UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ASHLEY L. LUMPKIN, | ) |
| | ) |
|       *Plaintiff* | ) |
| | ) |
| v. | )    No. 2:17-cv-00081-NT |
| | ) |
| NANCY A. BERRYHILL, | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
|       *Defendant* | ) |

## *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the ALJ erred in his assessment of five separate medical opinions submitted in her case as well as statements provided by her mother. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 13) at 4-15. I find no error, and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Act through September 30, 2017, Finding 1, Record at 23; that she had severe impairments of degenerative disc disease, fibromyalgia, headaches, a mood disorder, and an anxiety disorder, Finding 3, *id*. at 23; that she had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that she was able to lift and carry 25 pounds frequently and 50 pounds occasionally, sit for six hours in an eight-hour workday, stand or walk for six hours in an eight-hour workday, frequently climb ramps and stairs, and occasionally stoop, crouch, and climb ladders, ropes, and scaffolds, and retained the ability, on a sustained competitive basis, to understand and remember simple tasks, use judgment in making simple work-related decisions, respond appropriately to supervisors, coworkers, and usual work situations not involving the public, and adapt to changes in ordinary work settings, Finding 5, *id*. at 26-27; that, considering her age (29 years old, defined as a younger individual, on her alleged, amended disability onset date, April 12, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 33-34; and that she, therefore, had not been disabled from April 12, 2013, through the date of the decision, January 26, 2016, Finding 11, *id*. at 34-35. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks remand on the basis of challenges to the ALJ's assessment of the opinions of four agency examining consultants, Roger Ginn, Ph.D., Edward Quinn, Ph.D., Family Nurse Practitioner ("F.N.P.") Stacie Kunas, and Pamela J. Wansker, D.O., the opinion of treating physician Peggy Wyman, M.D., and statements of the plaintiff's mother, Tammy Cook. *See* Statement of Errors at 4-15.[2] For the reasons that follow, I find no error, agreeing with the commissioner that the plaintiff's arguments as a whole amount to an impermissible invitation to the court to reweigh the evidence before the ALJ. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 14) at 5, 8; *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) ("[T]he resolution of conflicts in the evidence is for the [commissioner], not the courts.").

---

[2] The plaintiff's counsel also contended at oral argument that, because the plaintiff amended her alleged onset date of disability to April 12, 2013, *see* Record at 20, the ALJ erred in relying on the 2012 opinions of agency nonexamining consultants, which became stale because they preceded that date. As counsel for the commissioner rejoined, this point was not raised in the plaintiff's statement of errors and, accordingly, is waived. *See, e.g., Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for . . . the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

## A. Dr. Ginn

Dr. Ginn examined the plaintiff on June 18, 2012, diagnosing her with bipolar disorder and generalized anxiety disorder with moderate agoraphobia, describing her as "a woman with some significant problems with anxiety as well as bipolar disorder[,]" and stating that he did "not think she c[ould] get out of the house on a regular and consistent basis to be able to work" at that time. Record at 1124. He explained, "I think her anxiety level is too high and there are still issues with periodic manic episodes." *Id*.

The ALJ accorded the Ginn opinion little weight, explaining:

> Dr. Ginn examined the [plaintiff] on one occasion, and the degree of limitations cited is not supported and appears to be based in large part on the [plaintiff's] subjective allegations. This opinion is also inconsistent with Dr. Ginn's statement earlier in the report that the [plaintiff] was only "mildly" anxious, and the record as a whole, including the State agency assessments, and the [plaintiff's] reported activities of daily living.

*Id*. at 31 (citation omitted).

The plaintiff faults this assessment on the bases that the ALJ, as a layperson, placed undue weight on Dr. Ginn's observation that she appeared "mildly anxious[,]" ignoring the totality of his expert findings on examination, and wrongly rejected his opinion in part because of his status as a onetime examining consultant, a rationale that runs "counter to the stated purpose of sending a claimant to a consultative exam." Statement of Errors at 5-6. She adds that the ALJ's reliance on the latter rationale was further weakened by his selectivity in its use: he accorded most of Dr. Quinn's opinion great weight although Dr. Quinn, too, was an agency examining consultant. *See id*. at 6. She argues that, pursuant to Social Security Ruling 96-2p ("SSR 96-2p"), the ALJ should have given the Ginn opinion substantial or great weight. *See id*.

As the commissioner rejoins, *see* Opposition at 6, SSR 96-2p is inapposite because it pertains to assessment of the opinions of treating, rather than examining, sources, *see* SSR 96-2p,

reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 110. "A onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons." *Smythe v. Astrue*, No. 2:10-cv-251-GZS, 2011 WL 2580650, at *5 (D. Me. June 28, 2011) (rec. dec., *aff'd* July 21, 2011) (citing 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), since redesignated as 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2)). Indeed, there is authority that "failure by the ALJ to articulate or explain the weight given to the reports of the examining or consultative physicians can be harmless error." *Id*. (citation and internal quotation marks omitted).[3]

In any event, as the commissioner argues, *see* Opposition at 7, even if the treating source rule applied, the ALJ supplied good reasons for his attribution of little weight to the Ginn opinion, observing that the cited limitations appeared to based in large part on the plaintiff's subjective allegations and were inconsistent with the record as a whole, including the opinions of agency nonexamining consultants and the plaintiff's activities of daily living. *See* Record at 31; *Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan. 2, 2018) ("lack of support and inconsistency with other substantial evidence of record" among good reasons for affording treating source opinion little or no weight); *Day v. Berryhill*, No. 1:16-cv-00593-JAW, 2017 WL 5037454, at *5 (D. Me. Nov. 2, 2017) (rec. dec., *aff'd* Nov. 20, 2017) ("inconsistency of treating source's opinion with claimant's activity level"

---

[3] At oral argument, the plaintiff's counsel distinguished *Smythe* on the basis that *Smythe* did not concern a situation, as here, in which an ALJ elected to give great weight to the opinions of two agency nonexamining consultants while rejecting in whole or in part the largely consistent opinions of four agency examining consultants and a treating physician. In such circumstances, he contended, an ALJ must supply good reasons for rejecting multiple consistent opinions of examining consultants. Yet, the fact that an expert's opinion is consistent with those of other experts does not, in itself, entitle that opinion to greater weight. *See, e.g., Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *10 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd,* Oct. 23, 2012) (consistency between treating sources' opinions did not entitle them to additional weight when ALJ supportably found them inconsistent with the record as a whole). Furthermore, even had the ALJ been obliged to supply good reasons for his assignment of the weight given agency examining consultants' opinions in these circumstances, he did so as discussed herein.

and "reliance on a claimant's subjective allegations of pain" among good reasons for affording a treating source opinion little or no weight).

The ALJ did not err in also factoring in Dr. Ginn's status as a onetime examining consultant: an opinion author's relationship with a claimant, if any, is among several factors recognized as relevant to the evaluation of the opinion. *See* 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). There was no fatal inconsistency in his decision to give great weight to much of the Quinn opinion: while Dr. Quinn also was an agency examining consultant, the ALJ explained that he found those portions of his opinion generally supported by his findings and consistent with agency nonexamining consultants' assessments. *See* Record at 32. As the commissioner observes, *see* Opposition at 6 n.5, an ALJ is not obliged to slavishly reference every relevant factor set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in weighing opinion evidence, *see, e.g., Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

Nor, finally, did the ALJ err in perceiving a clash between Dr. Ginn's finding on examination of mild anxiety and his conclusion that the plaintiff's high anxiety, as well as bipolar symptoms, prevented her from sustaining work, particularly in view of his further finding that Dr. Ginn relied in large part on the plaintiff's subjective allegations in forming his opinion.

### B. Dr. Quinn

Dr. Quinn examined the plaintiff on July 28, 2015, diagnosing her with generalized anxiety disorder, panic disorder without agoraphobia, bipolar I disorder, most recent episode depressed, moderate, and post-traumatic stress disorder, and concluding:

> [The plaintiff] should be able to follow work rules. She may have difficulties relating to others due to her anxiety and depression. She should be able to use appropriate gross judgment. She may have some difficulties with stressors. She should be able to function independently and difficulties with attention,

6

> concentration, persistence, pace, and memory were not observed beyond cognitive limitations. She should be able to complete at least simple job instructions if not more complex and detailed job instructions based on her cognitive abilities; however, her emotional anxiety may impact her ability to function in occupational settings. She should be able to maintain personal appearance. She may have some difficulties with emotional stability. She may have some difficulties in social settings. She may have some issues with reliability.

Record at 2458-59. On the same date, he completed a form addressing the plaintiff's ability to perform mental work tasks in which he indicated that she had a range of no to mild limitations in her ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions and mild to moderate limitations in her ability to interact appropriately with the public, supervisors, and co-workers, and that she "may have issues relating to others due to her anxiety and depression." *Id*. at 2461-62. He elaborated: "She appeared quite anxious during the interview; she would have difficulties functioning in a job setting with the level of anxiety observed." *Id*. at 2462.

> The ALJ gave the Quinn opinion a mix of great and little weight, explaining:
>
> The degree of limitations cited is generally supported by Dr. Quinn's mental status examination findings and consistent with the State agency assessments, and has been given great weight. However, Dr. Quinn did not quantify the degree of difficulty functioning in a job setting the [plaintiff] would have, and this statement is inconsistent with multiple observations by other examiners that the [plaintiff] is only "mildly" anxious. This portion of his opinion has therefore been given little weight.

*Id.* at 32 (citations omitted).

The plaintiff contends that the ALJ erred in according little weight to Dr. Quinn's finding of difficulty functioning in a job setting based on a "highly selective" assessment that ignored Dr. Quinn's own observation on examination that the plaintiff was "quite anxious[,]" Dr. Ginn's statement that the plaintiff's anxiety was too high to permit her to work on a regular basis, and Dr.

Wyman's statement that "pain and fatigue are triggers for [the plaintiff's] anxiety." Statement of Errors at 6-7 (quoting Record at 1124, 2462, 2706).

As the commissioner observes, *see* Opposition at 4 n.1, the ALJ did not ignore Dr. Quinn's own finding that the plaintiff was quite anxious. He acknowledged that Dr. Quinn had indicated that the plaintiff "would have difficulty functioning in a job setting with the level of anxiety observed." Record at 32 (citation omitted). However, he deemed that statement inconsistent with multiple observations by other examiners that the plaintiff was only mildly anxious. *See id*. As the commissioner argues, *see* Opposition at 5, despite the existence of some evidence to the contrary, this statement was supported by substantial evidence, *see, e.g.*, Record at 2265, 2269, 2274, 2482, 2485, 2488, 2491, 2494, 2497, 2500, 2595, 2680. That was all that was required. *See, e.g., Manso-Pizarro*, 76 F.3d at 16.

### C. F.N.P. Kunas

F.N.P. Kunas examined the plaintiff on June 22, 2012, diagnosing her with fibromyalgia with multiple myalgias and chronic headache and concluding:

> [The plaintiff] appears able to perform the following work-related activities: Sitting, carrying, handling objects, hearing, speaking, and traveling. She may have difficulty standing, walking, or lifting for extended periods of time secondary to subjective myalgias associated with fibromyalgia. Unfortunately, her condition is one that causes unpredictable flare-ups of pain with residual aftereffects limiting her ability to perform such tasks in a reliable and predictable manner. Some days are reported as better than others. Certainly, she is able to perform most common work-related activities, but the duration of such may be limited secondary to pain and may affect her for days after[,] leading to truancy.

Record at 1131.[4] The ALJ found:

---

[4] The parties debate whether F.N.P. Kunas' report was co-signed by a physician, Alan Bean, M.D. *See* Statement of Errors at 7; Opposition at 5 n.4. As the commissioner notes, *see* Opposition at 5 n.4, the signature at the end of the report is illegible, and nothing in the report itself suggests that a physician reviewed or endorsed it, *see* Record at 1127-31, although the plaintiff's counsel represented at oral argument that F.N.P. Kunas and Dr. Bean perform consultative examinations in tandem. I need not address this conflict. Because I find that the ALJ's assessment of this opinion was proper even by standards applicable to treating physicians, it is immaterial whether or not it was endorsed by a physician.

> Ms. Kunas examined the [plaintiff] on one occasion, and she failed to further quantify the degree of limitations cited. Her opinion is not supported and appears to be based in part on the [plaintiff's] subjective complaints of pain. This opinion is also inconsistent with the record as a whole, including the State agency assessments, and the reported activities of daily living.

*Id.* at 31.

The plaintiff first contends that remand is warranted because the ALJ failed to rectify the error that was a basis for the Appeals Council's remand of his earlier adverse decision: his failure to weigh the Kunas opinion. *See* Statement of Errors at 8; Record at 214-15. That is not so. While the ALJ in his earlier decision merely recited Kunas' findings, giving no indication how he weighed her opinion, he made clear in the instant decision that he accorded it no weight, articulating several reasons for doing so. *Compare* Record at 31 *with id*. at 200.

The plaintiff nonetheless contends that the ALJ's handling of the Kunas opinion amounts to a second failure to weigh it properly because he failed to appreciate that her opinion was based on the totality of her examination and evaluation, including her objective findings, and ignored its consistency with the findings of Dr. Wansker, the agency consultant who examined the plaintiff on remand from the Appeals Council. *See* Statement of Errors at 8-10. She asserts that the ALJ violated Social Security Ruling 16-3p ("SSR 16-3p") when, having found that she had a medically determinable impairment that could reasonably be expected to cause her alleged symptoms, he failed to evaluate their intensity and persistence and determine the extent to which they limited her ability to work. *See id*. at 9.

As the commissioner observes, *see* Opposition at 8, SSR 16-3p does not apply to the ALJ's February 2016 decision. The ruling took effect on March 16, 2016, and this court has declined to apply it retroactively. *See Coskery v. Berryhill*, No. 1:16-cv-00477-NT, 2017 WL 2417847, at *1, 4 (D. Me. June 4, 2017) (rec. dec., *aff'd* July 7, 2017).

9

In any event, as the commissioner further notes, *see* Opposition at 7, the ALJ found that the Kunas opinion was based only "in part" – not entirely – on the plaintiff's subjective pain allegations and supplied several additional reasons for rejecting it, including that F.N.P. Kunas was a onetime examiner, that she failed to quantify the degree of limitations cited, and that her opinion was inconsistent with the record as a whole, including the assessments of agency nonexamining consultants and the plaintiff's activities of daily living, *see* Record at 31.

In so doing, as the commissioner observes, *see* Opposition at 7, the ALJ alluded to portions of his decision detailing the plaintiff's treatment history, including findings on examination, and activities of daily living, *see* Record at 27-30; *Ryder v. Colvin*, No. 1:15-cv-00509-GZS, 2016 WL 7048690, at *4 (D. Me. Dec. 5, 2016) (rec. dec., *aff'd* Jan. 9, 2017) (ALJ's detailed review of medical evidence of record, "preceding his statement that the totality of the evidence d[id] not support [physician's] opinion, set[] forth ample detail of the ways in which those of [the physician's] conclusions that the [ALJ] found 'excessive' were not supported by the weight of the evidence").

These constituted good reasons to give little to no weight even to the opinion of a treating source. *See, e.g.*, *Campagna*, 2017 WL 5037463, at *4; *Day*, 2017 WL 5037454, at *5. The fact that the Kunas findings were consistent with those of Dr. Wansker did not, in itself, entitle the Kunas opinion to greater weight. *See, e.g., Anderson*, 2012 WL 5256294, at *10.

### D. Dr. Wansker

Dr. Wansker examined the plaintiff on August 24, 2015, diagnosing her, *inter alia*, with chronic myofascial back pain with apparent lumbosacral degenerative disc disease exacerbated by a motor vehicle accident and migraine cephalgia. *See* Record at 2468. She stated:

> [The plaintiff] probably should not do anything that requires her to lift more than 30 pounds, [or] do repetitive motions with pushing, pulling, crawling, kneeling,

10

stooping, or bending. She should probably not sit without stretching every 20 minutes or stand or walk for more than 20 minutes without rest. She cannot sometimes use the foot pedal to drive, but otherwise has no specific restrictions to hearing, speaking, or traveling.

*Id*. Dr. Wansker also completed a form assessing the plaintiff's ability to perform physical work activities, indicating that she could frequently lift/carry up to 10 pounds and occasionally lift/carry up to 20 pounds; sit, stand, or walk for up to 20 minutes at a time, sitting for a total of up to seven hours in an eight-hour workday and standing or walking for a total of up to two hours each in an eight-hour workday; could only occasionally push/pull with her hands and never operate foot controls with either foot; and had additional postural and environmental limitations. *See id*. at 2469-74. In response to the question, "If the total time for sitting, standing and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?" she replied, "resting (reclining) stretching[.]" *Id*. at 2470.

    The ALJ gave Dr. Wansker's opinions little weight, explaining:

Dr. Wansker examined the [plaintiff] on one occasion, and the degree of exertional, postural, and upper and lower extremity limitations cited is not well supported, is inconsistent with the State agency assessments and the [plaintiff's] reported activities of daily living, and appears to be based in part on the [plaintiff's] subjective allegations.

*Id.* at 32.

    The plaintiff asserts that the ALJ's conclusory statement that Dr. Wansker's degree of exertional, postural, and upper and lower extremity limitations was not well supported is erroneous in view of her finding on examination of "paravertebral muscle spasms and pain to palpation of the L3/4, L4/5, and L5/S1 segment of her low back." Statement of Errors at 10-11 (quoting Record at 2468). She contends that this objective physical finding "clearly supports Dr. Wansker's opinion that during a normal workday, when the [p]laintiff is not 'sitting, standing and walking,' she must be 'resting (reclining) stretching.'" *Id*. at 11 (quoting Record at 2470).

11

Finally, she reiterates the arguments made in connection with the Ginn opinion that the ALJ's reliance on the onetime nature of a consultative examination was misplaced and that, pursuant to SSR 96-2p, he should have afforded the Wansker opinions substantial or great weight. *See id*. These latter arguments founder for the reasons discussed above in connection with the Ginn opinion.

As to the plaintiff's former arguments regarding objective physical finding, while Dr. Wansker's finding of spasms and pain to palpation of the plaintiff's lower spine provides some objective support for her opinion, it does not "clearly support[]" the precise limitations assessed. Statement of Errors at 11. In any event, the ALJ deemed the Wansker opinion to be partly based on the plaintiff's subjective allegations and inconsistent with other evidence of record, including the opinions of agency nonexamining consultants and the plaintiff's activities of daily living. *See* Record at 32. These constituted good reasons to give little to no weight even to the opinion of a treating source. *See, e.g.*, *Campagna*, 2017 WL 5037463, at *4; *Day*, 2017 WL 5037454, at *5.

### E. Dr. Wyman

Dr. Wyman, who had treated the plaintiff since September 28, 2004, completed a questionnaire on December 18, 2015, indicating that, if the plaintiff had attempted to return to full-time work at any time since March 13, 2012, she would have missed at least one to two workdays a month due to the combination of symptoms of her severe physical and mental conditions. *See* Record at 2705. She explained: "Suspect neck pain would flare, causing headaches to flare[,]" adding, "[a]ny work stress is likely to cause anxiety to flare." *Id*. Dr. Wyman further indicated that, if the plaintiff had attempted to return to full-time work at any time since March 13, 2012, the distracting effect of her chronic neck and back pain and chronic headaches would have caused her to be unable to consistently perform her work duties on a regular and continuous basis. *See id*.

at 2705-06. She explained: "Chronic pain and chronic fatigue are unlikely to allow this patient to work on a consistent basis[,]" adding, "This pain and fatigue are triggers for her anxiety." *Id*. at 2706. Finally, she stated, "Sitting or standing in one position for longer than twenty minutes tends to trigger neck and back pain." *Id*.

The ALJ gave the Wyman opinion little weight, explaining:

> While Dr. Wyman has treated the [plaintiff] for many years, her opinion has been given little weight as the degree of limitations cited is not supported in her contemporaneous treatment records and is based in large part on the [plaintiff's] subjective allegations.

*Id.* at 33.

The plaintiff asserts that the ALJ erred in not giving the Wyman opinion great or controlling weight pursuant to SSR 96-2p given (i) its consistency with Dr. Ginn's opinion, Dr. Wansker's sitting and standing/walking restrictions, and F.N.P. Kunas' opinion that the plaintiff's condition causes unpredictable flare-ups of pain that limit her ability to perform tasks in a reliable or predictable manner, possibly affecting her for days after, leading to truancy, (ii) the fact that it was not inconsistent with Dr. Quinn's opinions, and (iii) the fact that Dr. Wyman provided opinions on issues not addressed by any other examining consultant. *See* Statement of Errors at 12-13.

As the commissioner rejoins, *see* Opposition at 8, this argument invites the court to reweigh the evidence before the ALJ, *see, e.g., Irlanda Ortiz*, 955 F.2d at 769. As previously noted, the fact that there is consistency among or between opinions in the record does not entitle them to great weight when, as here, an ALJ points to other substantial evidence of record that is inconsistent with them. *See, e.g., Anderson*, 2012 WL 5256294, at *10.

Beyond this, the plaintiff does not come to grips with the ALJ's assignment of little weight to the Wyman opinion based on its inconsistency with Dr. Wyman's own contemporaneous

13

treatment records and its adoption of restrictions based in large part on the plaintiff's subjective allegations, *see* Record at 33, which constitute sufficient reasons to assign little to no weight to the opinion of a treating physician, *see, e.g.*, *Campagna*, 2017 WL 5037463, at *4; *Day*, 2017 WL 5037454, at *5; *see also, e.g.*, SSR 96-2p at 110 ("[C]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "also is 'not inconsistent' with the other substantial evidence in the case record.").[5] There is, accordingly, no basis on which to disturb the weight accorded to the Wyman opinion.

### F. The Statements of Ms. Cook

The plaintiff's mother, Ms. Cook, submitted a Third Party Function Report dated May 10, 2012, *see* Record at 417-24, as well as a letter dated October 17, 2013, *see id*. at 466, in support of her daughter's applications for benefits.

In her Third Party Function Report, Ms. Cook indicated that the plaintiff always had headaches and was tired, never wanted to do much, sometimes got overwhelmed and angry, got depressed quickly and cried a lot, complained of pain a lot, and was limited in her ability to lift, bend, follow instructions, and get along with others. *See id*. at 417-22.

In her letter, Ms. Cook described ways in which she assisted the plaintiff, including helping her every day before she (Ms. Cook) went to work, making sure she took her medications and setting them up for her, helping get the plaintiff's children ready for school, speaking with the plaintiff on the phone several times a day, at times leaving work because of the plaintiff's

---

[5] In an abundance of caution, the commissioner catalogues examples of instances in which Dr. Wyman's progress notes indicate that the plaintiff's headaches and back and neck conditions were less limiting than described in her opinion. *See* Opposition at 9-10. Because the plaintiff has not argued that the ALJ's finding of inconsistency between Dr. Wyman's opinion and contemporaneous progress notes was unsupported by substantial evidence, *see* Statement of Errors at 11-13, I need not consider this alternative argument.

headaches, going to the plaintiff's house after work to check on her, help her cook dinner, and help bathe her children and get them to bed, shopping with her, and sometimes finishing her shopping for her when her anxiety was such that she had to leave. *See id.* at 466. She indicated that the plaintiff needed more help on some days than others, had difficulty with crowds and anxiety, had pain and headaches that interfered with her ability to get out of the house, and on many days stayed in bed. *See id.* She added: "Without my help, [the plaintiff] would not be able to live on her own with children and maintain her household with the bad headaches and often the pain in her body." *Id.*

The ALJ gave Ms. Cook's statements "little to no weight as they are from a non-medical and non-impartial source," "the degree of impairments cited is not substantiated in the evidence[,]" and "[t]he degree of assistance reported by [Ms. Cook] is also inconsistent with the [plaintiff's] August 5, 2013, statement to examiners that her mother works and she does not have much of a support system." *Id.* at 31 (citation omitted).

The plaintiff contends that the ALJ erred in discounting Ms. Cook's statements on the basis that they were from a non-medical and non-impartial source, in violation of Social Security Ruling 06-03p ("SSR 06-03p"), and in deeming her statements inconsistent with each other and with those of the plaintiff, including the plaintiff's statements in her own Function Report dated May 9, 2012. *See* Statement of Errors at 13-15; Record at 409.

On the first point, as the plaintiff observes, *see* Statement of Errors at 13, SSR 06-03p provides that the commissioner may use evidence from "other sources" besides "acceptable medical sources," including parents, "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 327 (internal quotation marks omitted).

The ruling acknowledges that "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id*. It adds, "In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity[,]" such as parents, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id*. at 331. Yet, it does not provide that any particular weight be given to a lay witness's statements or proscribe consideration of such individuals' partiality or lack of medical training. In any event, the ALJ did consider the consistency of Ms. Cook's statements with other evidence. *See* Record at 31.

Even as to "other sources" who have seen a claimant in a professional capacity, SSR 06-03p does not require that an ALJ afford any particular weight to, or even necessarily discuss, their statements:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p at 331. The ALJ's handling of Ms. Cook's statements met or exceeded standards applicable even to that category of "other sources."

On the second point, as the commissioner notes, *see* Opposition at 10-11, the ALJ did not find Ms. Cook's statements either inconsistent with each other or inconsistent with the plaintiff's statements generally, *see* Record at 31. Rather, he deemed them inconsistent with an August 5,

16

2013, statement by the plaintiff. *See id.*; Record at 2267. The plaintiff's reliance on her May 9, 2012, statement as evidencing the consistency between her statements and those of her mother, *see* Statement of Errors at 14-15; Record at 409, accordingly misses the mark.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of January, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge